is left out of the record there for the same reason that they didn't put in evidence of marijuana in the first place. You may proceed. May it please the court, my name is Colin Feinman, I represent Pellant and Micah Gourde. I would like to reserve a couple of minutes for rebuttal. All right. Your Honor, I believe this case is squarely controlled by this court's precedence in Lacey, Hay, and Weber. In Lacey, the court stated that evidence the defendant has ordered child pornography is insufficient to establish probable cause to believe the defendant possesses such pornography. That's at page 745 of the opinion. In this case, we have significantly less. We have mere membership in an organization that is unequivocally, according to the record, not wholly illegitimate. It is a website which the affidavit itself states in paragraph 4C contains mixed content of standard adult fare and some undisclosed, unknown segment or discrete portion of contraband. Agent Moore, do you think Lolita has a, the word Lolita has a secondary meaning in society now? I mean, do you think that because of the book and the movie that when a website which is offering, as I understand it, without membership, you can log on and you will see this tantalizing things about this Lolita site has everything with young girls, the Pixar so cute preteen girls, and they put Lolita, that somebody would subscribe to an ordinary porn site with a preamble on the boilerplate about what these folks do, that when they see this thing about Lolita and preteen girls that they subscribe only to see the regular stuff? I mean, what are we supposed to infer under a standard review of that affidavit relative, again, to referencing to Lolita and these other things? I have a twofold response to that, Your Honor. First of all, it's not a question of what I would believe Lolita indicates. The FBI itself, and the testimony bears this out from the agents at the suppression hearing, does not think that the term Lolita really adds anything significant to the probable cause analysis. In my brief, I cited to the Perez decision, which is, of course, a southern district case on recent Candyman cases that was very much premised on this Court's opinions. And there's a very interesting element in the record there where the FBI agent who testified there indicated, well, the fact that this is the word Lolita is used, that this is indicating that this is a site that for people who love children, which was the way that the Candyman site was promoted itself, does not give them enough cause to believe that they even can go in and investigate at that point, because of the way the term is used both for constitutionally protected sites, fetish sites, or any other type of site that may use it as a promotion, but does not necessarily track the content. You know, the Candyman, it's interesting because I went through and pulled out all the Candyman cases, which I think there's four or five that I quickly found. At this point, yes. And they are kind of evenly split on whether Candyman itself gives you enough probable cause because of the nature of the site. So I guess I don't – neither one of them really does much for me on the Candyman cases. They're consistent in one very interesting respect, though, Your Honor. If you look at the decisions, and it's not clear, of course, what record was presented in each circuit. But, for example, in Strouser and Perez, the courts made findings that the sites were not wholly illegitimate, that there was mixed content or mixed purpose. The most recent case, which has come out recently, is Froman from the Fifth Circuit. I don't know what the record is there, but they found that the site was wholly illegitimate. They maybe had different facts presented. We are in a situation where the record indisputably establishes that this site was not wholly illegitimate. Well, that was – I guess you know that that point seemed to be clear in all the records. And my question then in trying to fit this with Weber, Hay, and Lacey is, in each of those cases, they had actual downloading or pictures ordered or there was additional what I'll call physical evidence of a violation that would lead you to think that they were going to have materials. And so it seemed to me that here a big distinction was we basically have this guy subscribing to the website. And is there anything more than that? No, Your Honor. And this is my – this was my starting premise. Since we have nothing more, the only way that they could even approach the sufficiency of the facts in the affidavit to make up probable cause would be if it was wholly illegitimate. It's beyond dispute that it's not. And even then, I think there is an interesting tension between United States v. Rubio, the case where this Court really set forth the wholly illegitimate enterprise issue, and Lacey and Hay, where I think the Court has very clearly indicated that you have to have some evidence of the actual possession. There are any number of ways the FBI could have done this. It's not as if – it's a situation where the information, if it existed, was not available through ordinary investigative means. In fact, Lacey and Hay sets out the roadmap for this. You simply go into the computer network. We know the I.O.S. server was seized by the FBI, in this case, almost five months before the warrant application to search Mr. Gore's home. No effort was made to go in to find out the information that this Court's precedents very clearly require, which was, was there a specific image that can be shown, not simply on some subjective representation of what it is, but can be shown to the magistrate sufficiently, was a contraband image, and track that to a computer that at least the defendant had access or control to. There was no attempt to do that. So they didn't go in and find evidence that he had downloaded child porn, right? Correct. But wasn't there evidence that to subscribe and be a member, he had to at least click on or view some page that showed they were offering child porn? Well, the argument that was proposed at the suppression hearing, which has no factual basis within the four corners of the affidavit, was that there were three thumbnail images on the second publicly accessible web page that were somehow automatically downloaded to any viewer's computer. Now, there are two points about that. First of all, that theory and any facts in support of that theory were never presented in the affidavit. And Agent Simpson, in the record, concedes that that does not appear anywhere in the record. And Simpson himself was not a computer expert. So this is essentially sheer speculation that was developed at the suppression hearing. If you can view the thumbnail, it's been downloaded. Now, does the record show that you can view the thumbnail? Could you view the thumbnail? Sure. You turn on the site, and there's the thumbnail, and you're looking at it. You don't have to download it. It's there. It's been downloaded by your computer. It's part of the website. But it's not part of the record. How, in the record, did that happen? No evidence. How was it just alleged bare bones that if you did it, you could get it? Is that what he did? It was alleged that all that was alleged was that by virtue of having the subscription, Mr. Gord had access to a website. No, I'm talking about the thumb sites that were on the public site. Oh, the thumbnails, transmission of the thumbnail or possession of the thumbnail was never alleged in the affidavit. Never. Was that, just to clear up, that was part of the argument at the hearing but not part of the evidence you're saying? That's correct, Your Honor. If you look at the record, pages 103 to 104 and various other points in the cross-examination of Agent Simpson, they concede that that argument, the idea that there was an automatic transition, was never presented in the affidavit. In fact, we have a 21-page affidavit in which there is no suggestion that there is an automatic downloading of any type of material from the site, unlike even the Candyman cases in which it was alleged that there were automatic distributions by e-mail once you signed up. That was never alleged. And only three or four paragraphs alleging any specific information about Mr. Gord, namely, and limited to, his credit card information, his e-mail address, with no suggestion that there was any transmission, and his home address. That is the extent of the information regarding Mr. Gord and his activities on the website in this entire affidavit. But, Your Honor, I would ask very briefly to address you to page 79 of the excerpt of the record, lines 14 to 21, where this exchange took place. And I think this is what clarifies the core issue. Question. And, of course, we established that, in fact, there is no evidence in this affidavit, no facts whatsoever, that refer to the downloading or transmission of any kind to or from Mr. Gord's computer. Answer. This is from Agent Moriguchi, who prepared the affidavit. That's correct. There is no specific information. Question. And that's what warrant applications are about, particular information, correct? Answer. Well, to establish probable cause, yes. I don't think the concession can be any clearer with that testimony and the other excerpts cited in my brief, that there is simply no evidence that Mr. Gord received by any means or possessed by any means any image. And that includes the thumbnails. As a subsidiary point on the thumbnails, I think the record is clear that there is no basis for this court or the magistrate to determine that they were, in fact, child pornography. We have a conclusory assertion that these were 12- to 14-year-old naked girls, and there's a characterization that they were lascivious. I've cited cases from the First and Sixth Circuits that say these type of bare legal conclusions regarding the age or posture in child pornography cases are legally worthless in terms of the probable cause analysis. There was no evidence that these images were, in fact, posted when Mr. Gord accessed the site, although the FBI was up and running on the Lolita Girls site from August to January, a five-month period between 2002 and 2001. And they knew the exact date that Mr. Gord got his subscription, which, as far as we know, is the only time he, in fact, accessed the site. There was no effort to demonstrate to the magistrate, first of all, what these photographs were, which could have been printed or downloaded and presented, and no evidence more dispositively that they were even on the site on the day that Mr. Gord accessed it. Let me – I am – would be troubled by having a search warrant established for probable cause simply by membership in what I'll call a mixed-use site without more. But I was having a little more trouble overcoming the Leon issue. So I want you to run out of time because I would like to hear your argument on that. Thank you. As I indicated earlier, this is not a situation where information was needed in order to make the affidavit sufficient that was not available by normal investigatory means. The FBI had seized the Iowa server. They had a CART team, which is a computer recovery team, analyze this site. Agent Moriguchi testified repeatedly, both on the record at pages 67 and 87 to 88, that these servers routinely stored the information that would have indicated what images, if any, were sent to Mr. Gord, the date the images were sent, and even recovered the specific images to show the magistrate what, in fact, if anything, was transmitted to Mr. Gord. Whose testimony was that? This is Agent Moriguchi, the affiant. If you look to 67 of the record and 87 to 88 and the other citations in the facts section of my brief at page 7, you will find that this is undisputed, that this information would have been available and could have been recovered under normal circumstances, and the FBI made no effort to do so. And that's exactly, remember, what happened in Lacey. And, hey, the FBI had, first of all, much greater information about the target. These were people who had either ordered apparent trial pornography in the past or had contacts with children that were sex-related. Mr. Gord came before this search warrant, before this application, with an entirely clean record. All that's there is his address and his credit card number and the fact that he subscribed. And even then the court required that there was, or at least found that the evidence was sufficient in the warrant because there were specific images that were indisputably contraband, that the FBI demonstrated were delivered and received by the target's computer. If you knew to a certainty that he had never downloaded anything from this site, say that they checked the computer and they knew he'd never downloaded anything from this mixed-use site, still could his membership in the site, from which some FBI officer is saying there are downloads of pornography being made, could that be evidence that he may have pornography at his home or there's a fair probability of it? Absolutely not, Your Honor, for several reasons from this court's precedent. First of all, United States v. Rubio says unless the enterprise is wholly illegitimate, then the mere fact of membership creates no nexus that's meaningful for the probable cause analysis between association with the enterprise and what is the alleged criminal conduct occurring. So in that regard, no. In addition, we would then be in a situation that the court very clearly disapproved of in Weber, which is that all the government would need to do is set up a phony website, advertise it as a child pornography website, wait for people to sign in or subscribe, and execute search warrants in their home. That was exactly the scenario that the court disapproved in Weber. I thought Weber didn't involve computers. Well, Lacey and Hay did. And Lacey and Hay very clearly indicated that not only is ordering insufficient, there needs to be some evidence not only that possession or receipt occurred, and this is very significant in terms of this thumbnail argument. The court also said there must be some evidence to show that the possession or the receipt was not unintentional or accidental. If we take the government's late-breaking theory in terms of the download, the automatic downloading of the thumbnails to its logical conclusion, that would vitiate any limits to probable cause analysis in the Internet and computer realm. Anybody who happens inadvertently to click on this publicly accessible page for whatever reason, without any intent of downloading or any intent of storing or collecting the image, then according to the government's theory, which is not established, I do not concede that this is the way computers work. But taking their theory at face value, at that point, simply by viewing the page, regardless of your intention of being at that point in the Internet, the government would have probable cause indefinitely to search your home and your personal computer. I submit, Your Honor, that that simply cannot be correct. Just to tie up the Leon issue, we are dealing with a situation where the court's precedents in this regard are well established. The officers are expected under Leon, this is from Leon, to have reasonable knowledge of what the law prohibits, given that the court has very clearly announced that ordering is not sufficient. This is even where somebody has responded to an explicit advertisement or solicitation for child pornography and requested items that are unequivocally contraband. That is still not sufficient. That there has to be some showing of actual possession. It just is incredulous or incredible to believe that something so significantly less, which is mere membership, mere access to a site, that by the government's own concessions contains both legal and constitutionally protected material and contraband material, would somehow be sufficient. That would be very much a step backward from what the court has already clearly announced is required. Do you want to save time for rebuttal? Yes. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court and counsel for the appellant. My name is Janet Freeman, and I represent the United States in this matter. I was trial counsel in the district court. I would like to get right to the heart of the case and talk about computers and talk about how this case can be distinguished from Weber and from Lacey as well as the Hay cases. And in making my arguments, I wish to emphasize that those cases do not stand for the very proposition that's being presented to the court here today, and they can be distinguished. As Justice Gould has pointed out, the Weber case was a brick-and-mortar case. It does not involve computers. My point is that when we are in the world of virtual reality, things are a little bit different than they were before the onslaught of the use of the computers. And in making these arguments today, I do not mean to suggest that merely clicking on a website is sufficient for the probable cause analysis and for the Fourth Amendment purpose. Instead, what I am saying is that the virtual reality of computers is such, along with other items and other evidence presented in the affidavit, that when you do have data which has been transmitted, received, downloaded by whatever name you wish to call it, it can give rise to a basis to believe that evidence will be found at a place where you think it will be. In other words ---- which can be downloaded, and membership gets you to that place. But then there's nothing further than that, and there's some boilerplate about what people do. They collect it, they download it, whatever. I guess what I'm having a problem with is that it's Lacy. Lacy is a computer case, right? Lacy is a computer case. And as I remember, Lacy downloaded the chips, the two chips, the depicted miners. So Lacy actually had downloaded them. You're asking us to go one step further, that the two-month subscription, which puts you in a position, and the website purposely had these whatever you call them, galleries, pictures, whatever, that once you subscribe, you got to the gallery, you got to the point where you could download, and that's what he said in the affidavit. And he did then profile what these folks do. But you're saying that we can then go one step beyond Lacy because we're not dealing with a bricks-and-mortars case and saying once you've got to the point where you're now able to download, that's enough probable cause to go in and see whether you did. I think it involves a little bit more than that. In this case, what the agents believed and what the evidence suggests and what an inference I want to know what's in the affidavit because that's what we have to look at. What the affidavit says and what the affidavit presents is the steps, the affirmative steps that a person must proceed in order to become a member of that website. The affidavit says that the operator of that website stated, stated this is a child pornography website and I operate this website as a source of income. So we know it's a child pornography website. The affidavit goes on to say and to present the steps that are required, the affirmative steps required. And that is you first have to find the site which has the name Lolita Girls and we've talked about that a little bit in my brief. And that term, Lolita Girls, does have a meaning. Let's go way beyond. I think we're way beyond it. The question is having done all that, having paid the money, then what's the next step in the affidavit that shows that it satisfies a requirement, if any, that he downloaded or is it sufficient that he is capable at any second to download and store them as part of his profile? I think we need to look at the term download. And this Court has presented the definition of download in the Moorbacker case of 1999 which says information is downloaded when one computer receives information from another computer. So the fact that they can look at, if you will, I would call it a gallery or an album, whatever. It's not a list. I think the record shows that when you get on this site, you will see the picture that you're going to see. That's correct. An image which represents something that you can keep permanently in your computer, another image. So you're saying the computer has now downloaded into your computer that image sufficient that you have now violated the statute? What I'm suggesting is that once you access the website, you click on that website, you have therefore downloaded the image appearing on the screen. Well, but it's more than that, isn't it? Because if you're in the public sector, you may or may not want to be there, but once you affirmatively buy it, I thought that the linchpin here was in your argument, once you affirmatively pay $19.95, then you go, So the linchpin suddenly appears, the screen parts, and the veil opens, and there she is. And all you have to do is look at the image. You've now downloaded it. Whether you want to permanently keep it and store it, that's another issue. Is that what you're trying to say? Well, I am saying that, and I'm saying more than that as well. There's a lot of things going on here with this particular website. Once the site is accessed, and we know it had to be accessed, we know that it was in operation. It was accessed because he paid $19.95. We know that. That's key, isn't it? That's key. And we know in order to pay $19.95, he had to take five steps to get to that point. He had to find the website, he had to click on the That's not hard these days. They come to you. But you can stop, you can leave, you can walk away. To me that's irrelevant. We know he subscribes to the website, and so you can give me all those 25 steps and you can split it up. But here's the real question that you haven't really gotten to. Does his signing up for membership in the website without something more, is that the basis for probable cause, when he's signing up for a website that is both legitimate and illegitimate material on it? Signing up for the website, in addition to the other things presented, is sufficient for probable cause. Signing up for the website means that a person will see this is a child pornography website. Just being on the front page Stop there one second. I am a complete weirdo. I've got a computer and I'm a person out in this world and I'm sort of a fascinated person. So I see the advertisement, I go through the 25 steps, I pay the $19.95 and I never go back. But I pay the dues every month. He never saw Little Egypt because he never parted the screen. You're telling me the mere fact that he can do it, the mere fact that he went through the steps, that he knew what he was doing. He went through 25 steps, he went through 30 steps, paid the money, but he never clicked the thing and went on the site. There's no evidence here that he did. There's evidence that he paid the money and he had the ability. I think the affidavit is a repeat with ability, but I don't see the next step. What am I missing here? But once you've done those 25 steps, those 25 steps are now downloaded onto your computer. They're there. Those images, those thumbnail images are there. And now if you continue your memory. Okay, let's talk about, we're kind of talking generalities and, of course, we all know several things. One, websites change. So we have to know what's in the record, what he saw and what's in the affidavit. Counsel for Mr. Gortz says, for example, that the thumbnail issue is not documented. So it would help us if you could point us where in the record we would look to that. What, where you would look is at pages, excerpts of record 4, 5, and 6. And that will give explicit detail on what a person would have seen when accessing the website. And that's critical because once you access the website, you're going to be put on notice. Lolita girls, 12 to 17-year-olds, you're also going to see images. I guess here's my real fundamental problem, you know. I subscribe to audible.com, you know, these books on digital tape. And I have no idea what kind of all kinds of books they sell. And the only reason I haven't unsubscribed is because I'm too lazy. And so they keep telling me that I'm a member. And so it's just like, you know, it keeps going. And I have good intentions of getting my books, but I always forget to get them every month. What if there's, I mean, they probably sell books that someone might consider pornography. So it's a legitimate and an illegitimate site, let's say, just hypothetically. What's the difference between multiple sites on the Internet and this one, where if it's adult pornography, he's permitted to go look, correct? Well, he's permitted to click on a website. Sure. And if it's legitimate First Amendment right to go adult to adult. Listen to the question. Adult to adult, is there any problem with that? Adult to adult, to adult pornography? Yeah. There's no problem looking at adult pornography. Okay. And so now what we have is some legitimate mixed with what, based on the affidavits, is illegitimate child pornography, correct? This is primarily a child pornography website. Okay. That's what the website operator said. This is a child pornography website. He didn't say this is an adult pornography website. No, I know he didn't say that, but I thought, see, that's the point. It's like it's a, you know, maybe it's three quarters, one quarter or something. And what's troublesome here is that unlike the bricks and mortar case, the computer cases actually are easier to prove because all you've got to do is go into the server and you've got a digital documentation of what he did and didn't do. But here all we say is that he signed up and all we know is that he signed up for the website. Why shouldn't the officers or the agents have had to go in, which they had plenty of time to do in the four months, and confirm whether he did or didn't order or look at any specific things? The issue in the Hay case and the Lacey case, they didn't know who they were dealing with. They didn't know the recipient of the images. They had only an Internet protocol address or they had an alias by the name of Jim Baker. Right. Here they knew who it was. It was Mike Gord at this address. Right. All they know, though, is Mike Gord. But that doesn't help. They know that he signed. He, along with however many other people, are subscribers. So I guess that I'm trying to figure out what the rule is that we would write. Maybe you can help me on this. The rule would be that signing up for a multi-use pornography site that includes child pornography in itself is enough to trigger a search of your computer and home. Was that the rule? I'm not suggesting that. Okay. So now you tell me, if I had to write it up, and therefore we hold blank, what do we hold? I am suggesting that subscribership to a child pornography website with the evidence presented in the affidavit. I'm going to stop there. What evidence? The evidence that images appeared on the website, those images, at a minimum, have been downloaded onto the customer's computer, that a person who is a repeat paying customer of a child pornography website who does not remove himself from a child pornography website, and by the very specific features of that website, this is a person who has instant access to thousands of pictures of preteen cute naked girls. And when you combine that with the child pornography collector evidence. The profiling. The profiling evidence, which in this case, unlike the, I think it was one of the other cases from this circuit, but this case specifically tailored the profile evidence to this case. A person who joins a child pornography website, a person who pays a fee, this is almost 20 bucks a month to pay for something. I mean, if it was adult pornography, you can get that for free. And so here you've got a repeat paying customer who does not remove himself. Can I go back then? So I hear you. I'm trying to write this down because I want to figure out. So it's access to. I guess what I'm wondering in terms of what would be illegal. If he subscribes to this website and on page one or, you know, on the home page when you bring it up, there is child pornography. On the face page. Right. Face page. So he has to see this and then he types in his credit card number. Then he clicks the next page and he sees more of naked females displaying their genitals. Okay. Now I'm just. And then that's all he does. Okay. Is he guilty of violating the law at that point? I don't think you can say he's guilty of violating the law, but the question is probable cause and probabilities. We're not at a guilt finding phase. No, I understand that. I'm just trying to understand. I'm going at the other end coming backwards. Okay. You see what I'm saying? So I'm trying to figure out. So if he just goes on there and he signs up for the thing and he sees these, and then, of course. It goes into his computer. Well, it goes into his computer, but then, of course, he closes it and it's transitory. All right. He's in a ram situation. So out it goes. Is he at that point guilty of a crime? I would say at that point he possesses the images that he observed while he accessed however many pages of the website. He possessed those images. And I think there's a fair probability to believe that those images will be found on his computer. That's the list. Yeah. Because what you say in the application for the search warrant, evidence of possession, receipt, and transmission. So you're saying once you access the website, you've now seen the image. And your computer has received it. Yeah. It was in your ram, and you can see it on the screen. Correct. Now, the crime is having it and possessing it. And you're saying because you've gone there, paid the 20 bucks, the probability is, or the reasonable or probable cause of the crime, the probability is that you've now downloaded it because of your profile. And not only that. And everything else. When you download it, you never get rid of it because of your profile. I mean, you can get rid of it. But you're saying the profile clearly says they don't do it. Correct. But he could be guilty, couldn't he be guilty of a crime if he had, well, what was he charged with? Possession of child porn? He was charged with possession and pled guilty to that offense. Was he charged with downloading it or just possession? No, when you, downloading is not a term in the statute. Okay. You're guilty if you receive it, if you transmit it, if you possess it. He's guilty because of what they found down the road, not because of what was on his computer. Is the government just saying if somebody belongs to a, I know it's a mixed site, but it's a child porn site in part, and they pay money for that, and the site has the opportunity of downloading child porn, that those facts give sufficient cause, there's a fair probability in light of the profile, evidence that such a person is going to have child porn on their computer, whether it's from this site or some other site, is that? Those facts plus a few more. I wouldn't want to suggest to this Court that if we had evidence of membership, period.
judges: Brunetti, McKeown, Gould